SHAWN EUBANKS,

        Plaintiff,

        v.         Case No. 22-C-195

JACOB DORN and
GWENDOLYN VICK,

        Defendants.

## DECISION AND ORDER

Plaintiff Shawn Eubanks, a prisoner at Waupun Correctional Institution who is representing himself, is proceeding on Eighth Amendment claims against Defendants Jacob Dorn and Gwendolyn Vick. On November 15, 2022, Eubanks filed a motion for summary judgment. Defendants filed their own motion for summary judgment on December 21, 2022.[1] For the reasons explained in this decision, the Court will deny Eubanks' motion, grant Defendants' motion as to the claim against Vick, and deny Defendants' motion as to the claim against Dorn.

## BACKGROUND

At the relevant time, Eubanks was an inmate at the Waupun Correctional Institution, where Dorn was employed as a correctional officer and Vick was employed as a nurse. On April 22, 2018, Dorn escorted Vick to Eubanks' cell to respond to Eubanks' complaints about a bandage on his left hand coming undone. Eubanks informed Vick that he had removed and rearranged the bandage several times that day. Vick explained to Eubanks that he should leave the bandage alone

---

[1] Eubanks' response brief violated Civil L.R. 56 in that it exceeded the allowed page limit by seven pages. Given that his brief was handwritten, the Court will grant his belated motion for leave to file a brief exceeding the page limit.

and that health services would change the bandage every other day. Eubanks and Vick disagreed about whether the bandage should be changed daily, as the doctor had advised, or every other day as Vick said would occur. According to Eubanks, Vick instructed him to remove the bandage and show her his stitches. Vick asserts that she instructed Eubanks to throw the bandage on the floor when the trapdoor in his cell was opened. Dorn states that Eubanks was agitated, and so he explained to Eubanks that he needed to calm down before he would open the trap door for Vick to assess his injury. Dorn asserts that after a few moments, Eubanks settled down. Eubanks asserts that he was never agitated. Dkt. No. 85 at ¶3; Dkt. No. 89 at ¶¶1-3, 12, 14, 16, 19-20, 40, 41, 44.

According to Eubanks, Dorn unlocked the trapdoor, at which time Eubanks placed his hands outside the door to throw the bandages out as instructed and to be handcuffed for further assessment. Defendants, on the other hand, assert that Eubanks "forcefully shoved his right hand through the trapdoor" without warning. Defendants explain that inmates are not allowed to place their hands outside the trap door because doing so creates a safety risk in that an inmate could assault staff by grabbing them or throwing objects at them. Eubanks asserts that inmates are allowed to place their hands outside the trap in order to be handcuffed or to receive medical treatment. Dkt. No. 85 at ¶4; Dkt. No. 89 at ¶¶23-24, 47.

According to Dorn, he instinctually attempted to close the trap door and gave Eubanks numerous directives to pull his hand back inside his cell. Eubanks asserts that he yelled in pain while Dorn held the trap door closed on his hand for about thirty seconds. Eubanks explains he told Dorn he could not pull his hand back into his cell because Dorn was putting so much pressure on the trap door. Defendants do not recall Eubanks saying anything while his hand was in the trap door. Vick asserts that she did not intervene because she believed Eubanks' conduct created a security concern, and she defers to the judgment of security personnel unless an incident is life-threatening, which this was not. Dorn explains that he was able to get the attention of a sergeant

who entered the range. The sergeant covered the top of the trap so Eubanks could not reach out and then told Dorn to slightly open the trap door, at which time Eubanks pulled his hand back into his cell. Dkt. No. 89 at ¶¶24-25, 29-33, 49-51.

After Eubanks pulled his hand back into his cell, he told Defendants that his hand was broken. Defendants assert that Eubanks was agitated and would not calm down. Eubanks explains that he was in excruciating pain and requested medical attention. He clarifies that he was not using derogatory language or being disruptive. Vick asserts that she could not treat him because he was so worked up, so she returned to health services. Security staff determined it was not safe to transport Eubanks to health services for treatment. According to Vick, she was not allowed to see Eubanks until security staff decided he no longer posed a security concern. About two hours later, Vick returned to Eubanks' cell after she was informed that he was willing to cooperate and could be assessed and treated. Vick examined Eubanks' hand and noted a small abrasion, which she cleaned, applied a topical antibiotic to, and covered with a small bandage. Dkt. No. 89 at ¶¶52, 55-61.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than

3

simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment claim consists of an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of an excessive force claim, the plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (citations omitted). The "central question" when evaluating whether force used against a prisoner is excessive is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (quoting *Hudson*, 503 U.S. at 6).

The parties dispute what happened. Dorn asserts that Eubanks forcefully shoved his hand through the trap door without warning, which could have posed a security risk to Defendants. But Eubanks explains that he placed his hands through the trap door once it opened because Vick had instructed him to drop his used bandages on the floor and because he expected to be handcuffed for further assessment of his left-hand injury. Given that Eubanks had been instructed to place the bandages on the floor, a jury could reasonably conclude that Dorn's response of slamming the trap door on Eubanks' hand when he reached through was excessive. Further, although Dorn asserts

4

that he yelled at Eubanks to pull his hand back into his cell, Eubanks explains that he repeatedly told Dorn that he could not remove his hand because Dorn had all his weight on the trap door. Thus, a jury could reasonably conclude that Dorn unnecessarily prolonged Eubanks' suffering by yelling at him to comply with an order that was impossible for Eubanks to comply with.

Defendants spend much of their brief arguing that Eubanks' hand could not have been injured to the extent he claims, but whether the "old fractures" on his x-rays were or were not a result of Dorn trapping his hand is not dispositive of whether a jury could reasonably conclude that Dorn's use of force was excessive. The Supreme Court has repeatedly directed courts "to decide excessive force claims based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). Eubanks asserts that he cried out because he was in excruciating pain for about thirty seconds, and a photograph shows a cut with blood trickling down Eubank's hand. The amount of force needed to cause those injuries is sufficient for Eubanks' excessive force claim to survive. Should a jury conclude that Dorn used excessive force and that Eubanks is entitled to damages, the jury will have to determine the extent of Eubanks' injuries.

Finally, given the factual dispute regarding whether Dorn believed Eubanks posed a security risk or whether Dorn knew that Eubanks was placing his hand outside the slot in compliance with Vick's order to drop the old bandages on the floor, Dorn is not entitled to qualified immunity, which protects government officials from liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. If Dorn knew that Eubanks was merely complying with orders, then any force used by Dorn would be excessive. Thus, granting Dorn qualified immunity before a jury makes factual determinations regarding Dorn's motivation for trapping Eubanks' hand in the slot would be improper. Accordingly, Dorn is not entitled to summary judgment.

5

Vick, however, is entitled to summary judgment. Eubanks asserts that Vick failed to intervene when Dorn closed the trap door on his hand and then refused to treat his injured hand afterwards. But Vick is a nurse, not a correctional officer, and she explains that, unless an inmate's life is at risk, she will not intervene in security matters, which she believed this was. Just as a corrections officer may defer to a nurse's decision regarding medical treatment, a nurse may defer to a corrections officer's decision regarding security. "This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). As such, Vick was entitled to defer to Dorn's decision regarding whether Eubanks' conduct posed a security risk and his decision on how to respond to that risk.

Further, the record does not support Eubanks' assertion that Vick refused to treat his injury. Rather, the record shows that Vick *delayed* treating his injury until she was informed by security staff that it was safe to do so. A delay, however, does not necessarily reflect deliberate indifference. Instead, an *inexplicable* delay may reflect deliberate indifference only if "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citing *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007)). Here, the delay in Eubanks receiving treatment was not inexplicable—Eubanks was upset, and security staff informed Vick that he could not be safely transported to health services. And, even if Eubanks had been calm enough to be immediately evaluated, he has provided no evidence supporting a conclusion that the relatively short delay exacerbated his injury or prolonged his suffering. When Vick assessed his injury a couple of hours later, all she did was clean the abrasion, apply some antibiotic ointment, and give him a band-aid. Vick is therefore entitled to summary judgment.

6

## NEXT STEPS

Eubanks' claim against Dorn will proceed to trial. Given the complexity of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court concludes that Eubanks lacks the capacity to represent himself in the next stage of litigation. Accordingly, the Court will make efforts to recruit a volunteer lawyer to represent him. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Eubanks to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify Eubanks in the event a lawyer volunteers to represent him. In the meantime, the Court encourages the parties to explore whether settlement is possible.

## CONCLUSION

For these reasons, Eubanks' motion for summary judgment (Dkt. No. 66) is **DENIED**. Defendants' motion for summary judgment (Dkt. No. 78) is **GRANTED** as to Eubanks' claim against Vick and **DENIED** as to Eubanks' claim against Dorn. Eubanks' motion for leave to file a brief exceeding the page limit (Dkt. No. 93) is **GRANTED**.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of March, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge